UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

July 13, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Michael O. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-2287-BAH

Dear Counsel:

On September 9, 2022, Plaintiff Michael O. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 6), the parties' dispositive filings (ECFs 9[1] and 13), and Plaintiff's reply (ECF 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on April 11, 2018, alleging a disability onset of February 1, 2014. Tr. 281–84. Plaintiff's claim was denied initially and on reconsideration. Tr. 149–53, 157–58. An Administrative Law Judge ("ALJ") held a hearing on May 13, 2021, and a supplemental hearing on October 13, 2021. Tr. 38–120. Following the hearings, on November 23, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 11–37. The Appeals Council denied Plaintiff's request for review, Tr. 1–8, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff's brief exceeds the number of pages permitted by Local Rule 105.3. *See* Loc. R. 105.3 (D. Md. 2023) ("Unless otherwise ordered by the Court, . . . briefs shall not exceed thirty (30) pages[.]"). Plaintiff has not moved to waive the page-length requirement imposed by this rule. The Court excuses Plaintiff's noncompliance with Local Rule 105.3 on this occasion but directs counsel to comply with this and all other Local Rules in future filings.

[2] 42 U.S.C. §§ 301 et seq.

## II.	THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of February 1, 2014 through his date last insured of December 31, 2019." Tr. 16.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "irritable bowel syndrome, bladder obstruction, left wrist disorder, and obesity." Tr. 17.  The ALJ also determined that Plaintiff suffered from the non-severe impairments of "hypertension," "gastroesophageal reflux disease," "a small hiatus hernia," "medium-sized internal hemorrhoids," a "knee disorder," "mild fasciitis bilaterally," "neuropathy," "insomnia," "depression," and "posttraumatic stress disorder." Tr. 17–18.  At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 21.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs.  He can never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl.  He needs ready access to the bathroom.

Tr. 22–23.  The ALJ found that Plaintiff was able to perform past relevant work as a logistics specialist (DOT[3] #019.167-010).  Tr. 28.  The ALJ also made alternative findings at step five.  Tr. 29.  Specifically, the ALJ determined that Plaintiff could perform work as a storage facility rental

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles.  The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.  U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

clerk (DOT #295.367-026), a router (DOT #222.587-038), and a routing clerk (DOT #222.687-022). Tr. 29–30. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 30.

### III. LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

On appeal, Plaintiff argues that: (1) the ALJ failed to properly support her RFC conclusions with substantial evidence, a function-by-function analysis, or a narrative discussion; (2) the ALJ's RFC failed to adequately account for Plaintiff's severe bowel and bladder impairments; (3) the ALJ's evaluation of Plaintiff's mental impairments and mental functioning at step two constituted error; (4) the ALJ erred by posing certain hypothetical questions and failing to consider certain responses from the vocational expert at step four; and (5) the ALJ assigned improper weight to the Department of Veterans Affairs' (the "VA") determination that Plaintiff was completely disabled. ECF 9, at 8–40.

Defendant counters that: (1) "the ALJ explained her consideration of Plaintiff's subjective complaints, the medical evidence, and opinion evidence in formulating Plaintiff's RFC for a range of light work"; (2) the ALJ properly "included ready access to the bathroom in the RFC, but she explained that no more than normal breaks were needed for bathroom usage"; (3) "the ALJ reasonably determined that Plaintiff's non-severe depression and PTSD did not restrict his ability to work; (4) substantial evidence supported the ALJ's step-four findings and alternative step-five findings; and (5) the ALJ correctly considered Plaintiff's VA disability rating. ECF 13, at 5–24.

#### A. The ALJ Properly Determined Plaintiff's RFC.

The Court first considers Plaintiff's arguments that the ALJ failed to perform a function-by-function assessment of his ability to perform work and failed to set forth a narrative discussion showing how the evidence supported each of the RFC's conclusions. ECF 9, at 33–36. A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In determining the RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis,

how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). Moreover, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (alteration in original) (citation omitted). Thus, an ALJ must both identify evidence that supports his conclusions and build an accurate and logical bridge from that evidence to his conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). However, the ALJ "need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC assessment." *Jackson v. Comm'r, Soc. Sec.*, No. CCB-13-2086, 2014 WL 1669105, at *2 (D. Md. Apr. 24, 2014).

As an initial matter, the ALJ's failure to conduct a function-by-function analysis in this case does not warrant remand. The Fourth Circuit has held that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Remand is only required "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). As such, the lack of an explicit function-by-function analysis does not warrant remand here. Moreover, a careful review of the ALJ's decision makes clear that the ALJ supported the RFC determination with substantial evidence. The ALJ engaged in a narrative discussion of the medical evidence spanning almost six pages and citing to specific evidence in the record. Tr. 22–28. The ALJ also logically explained how this evidence, along with Plaintiff's testimony[4] and the opinions of medical professionals, leads to the conclusion that Plaintiff can perform light work with certain physical limitations. *Id.*

Despite this ample narrative discussion, Plaintiff contends that the ALJ failed to support her conclusion that Plaintiff could "perform the tasks required by light work, such as lifting up to 20 pounds at a time, and constant manipulative use of upper extremities[.]" ECF 9, at 28. I disagree. Pursuant to SSA regulations, light work involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work,

---

[4] Plaintiff contends that the ALJ "failed to make any findings" or "give proper weight to" his alleged limitations in cooking, cleaning, and taking care of personal needs. ECF 9, at 31. But the ALJ's decision demonstrates that the ALJ properly considered these issues against other factors. *See* Tr. 23 (noting that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision").

you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Here, the ALJ relied upon Plaintiff's testimony that he "could 'lift approximately 100 pounds' and 'carry approximately 20 pounds.'"[5] Tr. 22. The ALJ also noted an examination finding that Plaintiff's grip strength was "5+ on the right" and "4.5+ on the left[.]" Tr. 22, 1213. While the ALJ also noted that Plaintiff "has left wrist problems, but is right handed," Tr. 23, she accounted for this difficulty by limiting Plaintiff to never climbing ladders, ropes, or scaffolds. Tr. 27. Given this, the ALJ supplied the requisite logical bridge connecting the evidence to her conclusion that Plaintiff could perform light work. *See Woods*, 888 F.3d at 694.

Plaintiff also avers that "the ALJ gave significant weight to the state agency medical consultants . . . , but failed to adequately explain how [s]he or they arrived at those specific numbers or conclusions[.]"[6] ECF 9, at 29. This argument is unavailing. Contrary to Plaintiff's assertion, the ALJ found the reconsideration opinion of Dr. Robbins to be *unpersuasive*, as the ALJ found (contrary to Dr. Robbins's opinion) that "there is sufficient evidence to document the claimant's IBS disorder, urinary disorder, left wrist disorder, and obesity." Tr. 27. With regard to the initial-level opinion formulated by Dr. McGuffin, the ALJ found the opinion (which was based upon Dr. McGuffin's own examination as well as other record evidence) only *generally* persuasive, as she determined that greater RFC limitations than those opined by Dr. McGuffin were warranted based upon the evidence as a whole. Tr. 27, 121–32. As such, the ALJ's light-work designation was supported by substantial evidence.

> B.   The RFC Properly Accounted for Plaintiff's Bowel and Bladder Impairments.

Plaintiff also contends that the ALJ failed to support her conclusions regarding Plaintiff's irritable bowel syndrome, bladder obstruction, and need for ready access to a bathroom while working, with substantial evidence. ECF 9, at 11–22. However, a careful review of the ALJ's decision makes clear that these conclusions were adequately supported. In her decision, the ALJ noted that Plaintiff "had infrequent medical appointments and rare treatment for" irritable bowel

---

[5] The ALJ's reliance on Plaintiff's own statements belies the contention that the ALJ failed to adequately explain the conclusion that Plaintiff's assertions regarding his physical abilities lacked credibility, as well as Plaintiff's argument that the RFC was "based solely on objective medical findings or lack thereof, and not based on any comments regarding the subjective statements of the claimant . . . ." ECF 9, at 27–28 (emphasis omitted).

[6] Plaintiff also avers in passing that the ALJ violated the treating physician rule, *see* ECF 9, at 29, which mandates that the medical opinion of a treating physician be entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). But this regulatory framework is inapplicable to Plaintiff's case as it applies only to claims filed prior to March 27, 2017. 20 C.F.R. § 404.1527(c). Plaintiff filed his Title II claim in 2018. Tr. 281.

syndrome, and that the problem was "conservatively treated with over the counter medication."[7] Tr. 26. Nonetheless, the ALJ found that due to Plaintiff's "history of constipation, diarrhea, and urinary disorder," he required "ready access to the bathroom." Tr. 27 (citing hearing testimony and Exhibits 4F, 8F, 15F, 16F). The ALJ also concluded that because "the medical record does not significantly indicate [fecal or urinary] urgency," Plaintiff's bathroom usage could be accommodated by "no more than normal breaks." *Id.*

Plaintiff acknowledges that the ALJ's decision "account[s] for and correctly note[s]" Plaintiff's "main alleged severe impairments," including his "digestive and urinary disorders (classified as irritable bowel syndrome and bladder obstruction)." ECF 9, at 11. Nonetheless, he contends that "normal breaks" are insufficient to accommodate his need for frequent bathroom visits, as these visits "could be as much as 30 times in a day." *Id.* at 21. Plaintiff cites his own testimony and function reports to support this contention.[8] *See id.* (citing hearing testimony); *id.* at 13 (citing function report dated January 18, 2019).

However, Plaintiff's position is unavailing because, by his own account, his requirement for this number of bathroom trips per day has greatly fluctuated. *See* Tr. 26 (noting Plaintiff's statement that his issue with fecal urgency "has been going on and off for years"); Tr. 24 (noting that, in 2015, Plaintiff reported "having about one bowel movement (BM) every three days"); Tr. 26 ("During a gastrointestinal (GI) consult on March 29, 2019, the claimant reported 'some fecal urgency with 4-5 soft bowel movements (BMs) per day.[']"). In addition to noting these fluctuations and remarking that Plaintiff's medical records "do not indicate significant urgency" regarding his bowel disorder, the ALJ noted that: (1) Plaintiff "did not have frequent appointments for" his bowel disorder; (2) he was "conservatively treated with over the counter medication" for

---

[7] Plaintiff takes issue with the ALJ's characterization of Plaintiff's treatment for urinary and bowel issues as "conservative" given that Plaintiff has undergone, among other procedures, "over twenty (20) EGD/Colonoscopy procedures with biopsies[.]" ECF 9, at 13. But Plaintiff acknowledges the ALJ's consideration of these procedures, *see id.*, and it is unclear how the ALJ's conclusions would have differed had she refrained from labeling the procedures as "conservative." Indeed, Plaintiff acknowledges that his treatment was "sporadic" because of "the current state of affairs of VA treatment[.]" *Id.* In any event, the Fourth Circuit has held that an ALJ may consider a claimant's conservative treatment history among other factors when evaluating credibility. *See Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015); *see also Monroe v. Colvin*, 826 F.3d 176, 189–90 (4th Cir. 2016) (noting that an ALJ must also explain what is meant by "conservative treatment," and how that treatment was successful in managing the claimant's symptoms). Because the ALJ here properly considered Plaintiff's infrequent treatment and explained that the record indicates that such treatment was effective, *see* Tr. 26, the ALJ's evaluation of Plaintiff's treatment history does not compel remand.

[8] Plaintiff testified during the May 13, 2021 hearing that "on . . . average" over the "past couple of weeks or so," he used the bathroom "over 30 times" during the course of any given day. Tr. 77. In a January 18, 2019 function report, Plaintiff stated that he takes "multiple trips day and night to the bathroom." Tr. 376.

the issue; and (3) he was able to maintain substantial gainful employment from at least 1990 to 2014 despite allegedly having had bowel problems since 1988. Tr. 26–27.

The ALJ expressed similar concerns regarding Plaintiff's alleged urinary frequency. Specifically, the ALJ noted that while Plaintiff "reported 'urinating 20–30 times a day,'" the treatment notes of Dr. Lawrence Weber, who opined that Plaintiff's self-reported urinary frequency was "questionable given [that] he did not urinate during this appointment" and had "[n]o palpable bladder on exam," belied this testimony. Tr. 25–26, 1233. The ALJ also noted that Plaintiff "had infrequent medical appointments and rare treatment for" his bladder disorder. Tr. 26; *see also* Tr. 27 (noting that Plaintiff has maintained substantial gainful activity from at least 1990 to 2014, despite allegedly suffering from bladder dysfunction since he was a teenager). As such, the ALJ's decision makes clear that the ALJ properly weighed Plaintiff's testimony regarding urinary and bowel issues against objective findings in the record. Such weighing is permissible.[9] *See Craig*, 76 F.3d at 595 ("Although a claimant's allegations . . . may not be discredited solely because they are not substantiated by objective evidence . . . , they need not be accepted to the extent they are inconsistent with the available evidence[.]").

Moreover, an ALJ is not required to make specific findings regarding bathroom breaks where, as here, the ALJ determines that the objective medical evidence does not support such findings. *See Bowen v. Comm'r of Soc. Sec.*, No. 19-CV-00420, 2020 WL 2839318, at *4–5 (W.D.N.Y. June 1, 2020) (denying claimant's motion to remand where claimant with IBS argued that the ALJ erred by not making specific findings regarding bathroom breaks, but "no physician [ ] opined that [the claimant] requires any additional access to toilet facilities" and the "ALJ reasonably concluded that Plaintiff's allegations concerning the severity of his symptoms were not supported by evidence in the record"). Further, despite Plaintiff's contention, *Dowling* does not support remand. In that case, the Fourth Circuit determined that an ALJ erred because they "did not analyze [the claimant's] need for regular bathroom breaks" despite "considerable evidence in the record demonstrating that [the claimant] regularly experienced diarrhea and incontinence, as well as drainage from her anal fissure," which "caused her to require bathroom breaks at a frequent, and often unpredictable, rate." *Dowling*, 986 F.3d at 389. Here, unlike in *Dowling*, the ALJ specifically assessed how the medical evidence failed to support Plaintiff's contentions regarding urgency and frequency. Accordingly, I find that the ALJ's conclusions regarding Plaintiff's severe bowel and bladder impairments were supported by substantial evidence.

---

[9] Plaintiff unpersuasively contends that the ALJ cited to "irrelevant" and "inaccurate" medical evidence regarding Plaintiff's bathroom needs. ECF 9, at 12. Dr. Weber's treatment notes are certainly relevant to Plaintiff's urinary frequency and, while Plaintiff may disagree with the conclusions reached by the ALJ, Dr. Weber, or other medical sources in the record, this Court "does not reweigh evidence . . . in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).

C. The ALJ Properly Assessed Plaintiff's Mental Impairments and Functioning.

With regard to the ALJ's assessment of Plaintiff's mental functions, Plaintiff argues that the ALJ, "in finding mild limitations in the Concentration, Persistence and Pace domain of functioning (which . . . was error in and of itself given the substantial evidence to the contrary from his bathroom difficulties and mental health impairments), clearly committed the exact error noted by the *Mascio* court by failing to include a corresponding limitation regarding time off task in her RFC assessment." ECF 9, at 35. I disagree.

"Pursuant to *Mascio*, once an ALJ has made a . . . finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec. Admin.*, No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted*, No. ELH-14-2214 (D. Md. June 5, 2015). However, the ALJ in the instant case concluded that Plaintiff's difficulties in CPP were mild, not moderate. Tr. 19. As this Court has recognized, "there is no requirement that a finding of 'mild' difficulty in concentration, persistence, or pace must translate to a correlating limitation in the RFC assessment." *Moyers v. Comm'r, Soc. Sec. Admin.*, No. SAG-17-357, 2018 WL 1471459, at *4 (D. Md. Jan. 5, 2018) (citing *Mascio*, 780 F.3d at 638). Given this, *Mascio* does not compel remand.[10] Moreover, the ALJ's characterization of Plaintiff's concentration, persistence, and pace difficulties as mild was supported by substantial evidence. *See* Tr. 20 (noting that Plaintiff cared for others, noting Plaintiff's testimony that he could "follow both written and spoken instructions 'well enough,'" and noting that Plaintiff's "mental status examination findings on his mental health assessments . . . did not indicate significant dysfunction in this area").

Plaintiff further avers that the ALJ failed to create a logical bridge between (1) the evidence of Plaintiff's non-severe depression and post-traumatic stress disorder and (2) the ALJ's findings regarding the broad areas of mental functioning known as the "paragraph B" criteria. ECF 9, at 23–24. While Plaintiff proffers multiple pieces of evidence in support of his argument that "more restrictive" paragraph B findings are warranted, *id.* at 25, he provides no explanation of how these two specific mental impairments affected his ability to understand, remember, and apply information; to interact with others; to concentrate, persist, or maintain pace; or to adapt or manage himself. His failure to do so is fatal to his argument. *See Hancock*, 667 F.3d at 472 ("The claimant has the burden of production and proof in Steps 1–4.").

Moreover, it appears that the ALJ *did* connect Plaintiff's non-severe mental impairments to his ability to adapt or manage himself. *See* Tr. 20 (noting that Plaintiff took no psychotropic medications and that, after being diagnosed with "PTSD and major depressive disorder and recommended for 'Trauma Focused Supportive Therapy,'" Plaintiff did not undergo any mental

---

[10] Nor did the ALJ's failure to determine a percentage of time off-task due to Plaintiff's concentration, persistence, and pace difficulties constitute error. ECF 9, at 33. "[A]n ALJ is not required to determine a percentage of time off-task, and can simply consider whether a claimant has the ability to sustain work over an eight-hour workday." *Kane v. Comm'r, Soc. Sec. Admin.*, No. SAG-17-1252, 2018 WL 2739961, at *2 n.2 (D. Md. May 14, 2018).

health treatment). Given this, Plaintiff's disagreement with the ALJ's paragraph B conclusions amounts to a request to reweigh the evidence at step two. As I am not permitted to do so under substantial evidence review, this argument fails. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

### D. The ALJ Did Not Err at Step Four.

Plaintiff further argues that the ALJ erred at step four of the sequential evaluation process. ECF 9, at 39–40. Specifically, Plaintiff avers that the ALJ erred by failing to "consider and accept" the vocational expert's testimony that work would be precluded if an individual were off-task for 15 percent of the time or more, and if an individual were absent two or more times were month. ECF 9, at 39; *see also* Tr. 116. I disagree.

A vocational expert's testimony about absenteeism is "not required to be incorporated into the RFC" because such testimony "is a statement of the vocational expert's general observation and experience and does not pertain to [the claimant's] specific functioning." *Vicki M. o/b/o Monte H. v. Comm'r of Soc. Sec.*, No. 2:17-CV-00437-MKD, 2019 WL 438480, at *8 (E.D. Wash. Feb. 4, 2019) (citing 20 C.F.R. § 404.1545(a)(4)). Moreover, an ALJ does not err by failing to consider a vocational expert's testimony regarding time off-task, as "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *David R. v. Comm'r of Soc. Sec.*, No. 3:22-CV-88, 2022 WL 17362156, at *7 (S.D. Ohio Nov. 30, 2022) (quoting *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421–22 (6th Cir. 2014)). As such, the ALJ did not err by failing to incorporate the vocational expert's testimony regarding these issues into the RFC.[11]

Plaintiff also contends that the ALJ's first and second hypothetical questions, which were "consistent with the RFC assessment concluded by [the ALJ] in her unfavorable decision," constituted error because they contained limitations which were unsupported by substantial evidence. ECF 9, at 39. Because I find that the RFC was supported by substantial evidence for the reasons discussed above, this argument is unavailing.

### E. The ALJ Properly Assessed Plaintiff's VA Disability Rating.

The Court lastly considers Plaintiff's argument that the ALJ erred by failing to consider Plaintiff's "undisputed total disability from the VA as a result of the same impairments that form the basis of the instant Social Security disability claim." ECF 9, at 33. This argument is

---

[11] In the context of Plaintiff's argument related to the ALJ's alleged errors at step four, Plaintiff contends that the ALJ "failed to correctly or adequately account for the clinically and vocationally significant findings regarding" his difficulties "with concentration and completing tasks," which prevent him from performing "any type of substantial gainful activity" on a regular basis. ECF 9, at 40 (citing 20 C.F.R. § 404.156a). Because I find, for the reasons discussed above, that the ALJ adequately addressed Plaintiff's medically determinable mental and physical impairments, and because the RFC as adequately crafted does not preclude work at steps four or five, this argument is unavailing.

unavailing. In evaluating claims filed on or after March 27, 2017, the SSA "will not provide any analysis . . . about a decision made by any other governmental agency . . . about whether" a claimant is disabled. 20 C.F.R. § 404.1504. Plaintiff's claim was filed on April 11, 2018. *See* Tr. 281. Accordingly, "the ALJ was not required to consider—much less discuss or accord any weight to—the VA's disability determination" in this case. *Rogers v. Kijakazi*, 62 F.4th 872, 878 (4th Cir. 2023). Thus, the ALJ did not err by noting that 20 C.F.R. § 404.1504 barred her from providing analysis about the VA's disability rating in this case. Tr. 28.

## V.     CONCLUSION

For the reasons set forth herein, the SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge